No. 26-4100

IN THE

# United States Court of Appeals for the Tenth Circuit

KALSHIEX LLC,

*Plaintiff-Appellant,*

v.

SPENCER J. COX, *et al.*,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Utah,
No. 2:26-cv-151 (Shelby, J.)

## KALSHIEX LLC'S REPLY IN FURTHER SUPPORT OF EMERGENCY MOTION FOR AN INJUNCTION PENDING APPEAL

GRANT R. MAINLAND
ANDREW L. PORTER
NICOLE D. VALENTE
DAVIS B. CAMPBELL
MILBANK LLP
55 Hudson Yards
New York, NY 10001

MATTHEW L. LALLI
ANNIKA L. JONES
BRANDON S. FULLER
SNELL & WILMER LLP
15 W. South Temple, Ste. 1200
Salt Lake City, UT 84101

NEAL KUMAR KATYAL
*Counsel of Record*
JOSHUA B. STERLING
COLLEEN E. ROH SINZDAK
WILLIAM E. HAVEMANN
SAMANTHA K. ILAGAN
MILBANK LLP
1101 New York Ave., NW
Washington, DC 20005
Telephone: (202) 835-7505
nkatyal@milbank.com

August 28, 2026

*Counsel for Plaintiff-Appellant KalshiEX LLC*

# TABLE OF CONTENTS

Page

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. KALSHI IS LIKELY TO PREVAIL ON APPEAL ........ 2

A. Kalshi's Contracts Are Subject To The CFTC's Exclusive Jurisdiction ........ 2

B. Defendants' Preemption Arguments Fail ........ 4

II. THE EQUITIES STRONGLY FAVOR RELIEF ........ 11

III. KALSHI'S MOTION IS PROCEDURALLY PROPER ........ 13

CONCLUSION ........ 13

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page(s)

**CASES:**

*Am. Agric. Movement v. Bd. of Trade of Chi.*,
977 F.2d 1147 (7th Cir. 1992) .......... 1, 2, 9

*Arizona v. United States*,
567 U.S. 387 (2012) .......... 6, 9

*BNSF Ry. Co. v. Hiett*,
22 F.4th 1190 (10th Cir. 2022) .......... 4

*Chamber of Com. v. Edmondson*,
594 F.3d 742 (10th Cir. 2010) .......... 12

*Dickson v. Uhlmann Grain Co.*,
288 U.S. 188 (1933) .......... 9

*Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*,
269 F.3d 1149 (10th Cir. 2001) .......... 12

*Fort Halifax Packing Co. v. Coyne*,
482 U.S. 1 (1987) .......... 9

*Huron Portland Cement Co. v. City of Detroit*,
362 U.S. 440 (1960) .......... 9

*KalshiEX LLC v. Assad*,
No. 25-7516 (9th Cir. Aug. 28, 2026) .......... 1, 3, 4, 5, 6, 9

*KalshiEX LLC v. Flaherty*,
172 F.4th 220 (3d Cir. 2026) .......... 1, 3, 6, 7, 8, 11, 12

*McClendon v. City of Albuquerque*,
79 F.3d 1014 (10th Cir. 1996) .......... 13

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*,
456 U.S. 353 (1982) .......... 4, 5

**TABLE OF AUTHORITIES—Continued**

Page(s)

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374 (1992) .......... 11

*Murphy v. NCAA*,
584 U.S. 453 (2018) .......... 6

*Oneok, Inc. v. Learjet, Inc.*,
575 U.S. 373 (2015) .......... 10

*Populist Party v. Herschler*,
746 F.2d 656 (10th Cir. 1984) .......... 13

*Puerto Rico v. Franklin Cal. Tax-Free Tr.*,
579 U.S. 115 (2016) .......... 5

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
566 U.S. 639 (2012) .......... 10, 11

*Rice v. Santa Fe Elevator Corp.*,
331 U.S. 218 (1947) .......... 4

*Thornton v. Tyson Foods, Inc.*,
28 F.4th 1016 (10th Cir. 2022) .......... 5

*United States v. Minnesota*,
No. 26-cv-2661, 2026 WL 2150211
(D. Minn. July 27, 2026) .......... 3, 6, 7

**STATUTES:**

7 U.S.C. §§

1a(47)(A)(ii) .......... 3

2(a)(1)(A) .......... 2, 4, 5, 6, 7, 8, 10

7a-2(c)(5)(C)(i) .......... 2, 7, 9, 10

## TABLE OF AUTHORITIES—Continued

Page(s)

12a(2) .......... 7

12a(9) .......... 1

13a-2(1) .......... 7

16(a) .......... 7

16(e)(2) .......... 5, 6

16(h)(2) .......... 5, 6

15 U.S.C. § 3001(a)(1) .......... 10

18 U.S.C. § 1955 .......... 10

28 U.S.C. § 1291 .......... 13

28 U.S.C. § 1292(a)(1) .......... 13

Utah Code Ann. § 76-9-1404 .......... 11

Utah Code Ann. § 76-9-1405 .......... 11

**RULES & REGULATIONS:**

10th Cir. R. 8.1(A) .......... 13

17 C.F.R. § 38.151(b) .......... 10

Event Contracts, 91 Fed. Reg. 5,386 (Feb. 6, 2026) .......... 9

Fed. R. App. P. 8(a)(2)(A) .......... 13

Further Definition of "Swap," 77 Fed. Reg. 48,208 (Aug. 13, 2012) .......... 8

Prediction Markets, 91 Fed. Reg. 35,806 (June 12, 2026) .......... 3

## TABLE OF AUTHORITIES—Continued

Page(s)

**LEGISLATIVE MATERIALS:**

H.R. Rep. No. 93-1383 (1974) (Conf. Rep.) .............................................. 5, 9

H.R. Rep. No. 106-711, pt. 2 (2000)............................................................ 6

**OTHER AUTHORITIES:**

CFTC, *Order Directing Kalshi to Continue Exercising DCM Functions* (Aug. 11, 2026), https://perma.cc/6KYE-MPKQ............................ 1, 2, 10

*Exclusive*, American Heritage Dictionary (5th ed. 2022)............................. 4

## INTRODUCTION

This is a quintessential case warranting relief pending appeal. The courts of appeals are now openly divided on the merits. *Compare KalshiEX LLC v. Flaherty*, 172 F.4th 220 (3d Cir. 2026), *with KalshiEX LLC v. Assad*, No. 25-7516 (9th Cir. Aug. 28, 2026). And since Kalshi filed its motion, its entitlement to relief has become even clearer: Later that same day, exercising its emergency authority under 7 U.S.C. § 12a(9), the CFTC directed Kalshi to continue operating its exchange notwithstanding another state's efforts to shut it down. CFTC, *Order Directing Kalshi to Continue Exercising DCM Functions* (Aug. 11, 2026), https://perma.cc/6KYE-MPKQ ("CFTC Order"). If Utah pursues enforcement, Kalshi would face a Hobson's choice between complying with that federal order and risking potential criminal liability under Utah law, or complying with Utah law and violating a federal order. Kalshi cannot do both.

Defendants' arguments against relief are unsound. They ask this Court to ignore the statutory text in favor of extratextual policy. And they fail to grapple with the consequences of their position: If states can apply their gambling laws to DCMs, 50 states can impose "varying and potentially contradictory legal standards," subjecting DCMs to "total chaos" and preventing them from "operat[ing] efficiently" or even "at all." *Am. Agric.*

*Movement v. Bd. of Trade of Chi.*, 977 F.2d 1147, 1156 (7th Cir. 1992) (citation modified). Absent relief, Kalshi faces that irreparable harm; if relief is granted, Defendants face only the status quo.

## ARGUMENT

### I. KALSHI IS LIKELY TO PREVAIL ON APPEAL.

Kalshi's event contracts are subject to the CFTC's exclusive jurisdiction, which preempts Utah law. Defendants' contrary arguments fail.

#### A. Kalshi's Contracts Are Subject To The CFTC's Exclusive Jurisdiction.

The CFTC's exclusive jurisdiction covers all DCM-traded instruments. Mot. 11-13. Section 2(a)(1)(A) applies to "accounts, agreements …, and transactions involving swaps …, traded or executed" on a DCM. Congress swept in all "agreements" traded on DCMs so that 50 states could not each decide what falls outside "swaps" and "futures." The Special Rule confirms the point, defining "[e]vent contracts" as "*agreements*, contracts, transactions, or *swaps*," including contracts involving "*gaming*." 7 U.S.C. § 7a-2(c)(5)(C)(i) (emphases added). Kalshi's contracts are, at minimum, "agreements" traded on its DCM. The CFTC's August 11 order agrees: "the Commission has exclusive jurisdiction to regulate event contracts traded on Kalshi's DCM." CFTC Order 1-2.

Regardless, Kalshi's contracts are swaps. The CEA defines "swap" to include any contract providing for payment "dependent on the occurrence … of an event or contingency associated with a potential financial, economic, or commercial consequence." 7 U.S.C. § 1a(47)(A)(ii). The ordinary meaning of "associated with" and "potential" "reflects congressional intent to … cover many transactions and agreements." *United States v. Minnesota*, No. 26-cv-2661, 2026 WL 2150211, at *12 (D. Minn. July 27, 2026). And the CFTC has explained that "sporting events" "generate billions of dollars in economic activity and materially affect both regional and national markets." Prediction Markets, 91 Fed. Reg. 35,806, 35,807-08 (June 12, 2026) (citation omitted). The Third Circuit thus recognized that "Kalshi's sports-event contracts fit comfortably" within the definition. *Flaherty*, 172 F.4th at 227 (quoting *id.* at 233 (Roth, J., dissenting)). The Ninth Circuit read the definition differently today, but acknowledged that Kalshi's reading has "a colorable textual basis," that the operative terms "can yield competing, legitimate interpretations," and that the definition "might cover the sports event contracts here and thus preempt" state law. *Assad*, slip op. 37, 41, 47 (citation modified).

### B. Defendants' Preemption Arguments Fail.

***Express Preemption:*** Section 2(a)(1)(A) provides that trading on a DCM is subject to the CFTC's "exclusive jurisdiction." Defendants argue (at 8-9) that this language merely separates the CFTC's functions from those of other federal agencies. Not so. "Exclusive" means "[n]ot divided or shared with others," *Exclusive*, American Heritage Dictionary (5th ed. 2022), and courts have concluded that statutes granting "exclusive" "jurisdiction" to a federal agency preempt *state* law, *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 233-234 (1947) (citation omitted); *BNSF Ry. Co. v. Hiett*, 22 F.4th 1190, 1194-97 (10th Cir. 2022). The Ninth Circuit agreed, holding that "based on its plain wording, § 2 preempts state regulation of swaps that are 'traded or executed' on a DCM," and that the statute "confers 'exclusive' jurisdiction on the CFTC, which excludes all others, not just the SEC." *Assad*, slip op. 21. Indeed, the district court acknowledged "plenty of case law, including controlling case law," supporting "express preemption." Hr'g Tr. 72:4-6, D. Ct. Dkt. No. 72.

Defendants' contrary reading rests on *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353 (1982), a case that involved whether the CEA implies a private right of action, not whether it preempts state law. And the passage they quote (at 8-9) described not the enacted provision but an

earlier House version. *Id.* at 386. Congress adopted the Senate version, which struck the House language preserving concurrent regulation and added "except as hereinabove provided" to the savings clause—precisely to "preempt the field insofar as futures regulation is concerned." H.R. Rep. No. 93-1383, at 8, 35 (1974) (Conf. Rep.). The Ninth Circuit likewise rejected that reading, holding the "[e]xcept as hereinabove provided" clause "would be superfluous" unless Section 2(a)(1)(A) preempts state law. *Assad*, slip op. 21-22. Defendants also respond (at 9) that preemption does not reach generally applicable laws. But Section 2(a)(1)(A) does not turn on a state's label, and a criminal ban on offering DCM-traded instruments regulates them as directly as a competing registration regime.

Nor may Defendants invoke (at 16) the presumption against preemption: Courts "do not invoke any presumption against pre-emption" where a statute "contains an express pre-emption clause." *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016) (citation modified); *accord Thornton v. Tyson Foods, Inc.*, 28 F.4th 1016, 1023-24 (10th Cir. 2022); *Assad*, slip op. 20-21 (declining to apply any presumption against preemption to § 2).

Defendants argue (at 10-11) that Sections 16(e)(2) and 16(h)(2) would be superfluous unless Section 2(a)(1)(A) leaves state law intact. The

inference runs the other way. Mot. 17-19. Section 16(e)(2) reaches only "an electronic trading facility excluded under section 2(e)"—*i.e.*, the over-the-counter (*off*-DCM) derivatives markets; and agreements, contracts, or transactions "excluded" or "exempted" from the CEA's coverage and therefore outside the CFTC's jurisdiction as delineated in Section 2(a)(1)(A). Because those transactions need not occur on DCMs, Congress separately specified preemption as to them—knowing that "the current" CEA already "supersedes and preempts" state law "in the case of transactions conducted on a registered entity." H.R. Rep. No. 106-711, pt. 2, at 71 (2000). Regardless, those provisions impose no " 'special burden' that would make it more difficult to establish the preemption of laws falling outside" them. *Arizona v. United States*, 567 U.S. 387, 406 (2012) (citation omitted).

Defendants' comparison (at 9-10) to differently worded preemption clauses fails, because courts "do not require Congress to employ a particular linguistic formulation when preempting state law." *Murphy v. NCAA*, 584 U.S. 453, 478 (2018) (citation omitted); *accord Assad*, slip op. 22 ("there are no magic words that a statute must employ to preempt state law").

Nor do Section 2(a)(1)(A)'s savings clauses help Defendants. The first applies only "[e]xcept as hereinabove provided" by the grant of exclusive jurisdiction; the second refers to state *courts*, not state *law*. *See Minnesota*,

2026 WL 2150211, at *11 (neither clause "reserve[s] to the states the power to regulate" swaps traded on DCMs); *accord Flaherty*, 172 F.4th at 230-231.

Defendants' remaining textual arguments (at 11-12) fare no better. Section 7a-2(c)(5)(C)(i) empowers the CFTC—not the states—to decide whether event contracts involving activity unlawful under state law may be listed. Sections 16(a) and 12a(2) merely permit the CFTC to cooperate with state authorities and revoke a registration upon conviction; neither speaks to which laws reach on-DCM trading. And Section 13a-2(1) authorizes state attorneys general to sue to enforce the CEA but expressly excepts actions against "a contract market."

Defendants' head count of contrary district-court decisions (at 14-15 & nn.7-10) cannot overcome the statutory text. The Third Circuit held Kalshi likely to succeed, *Flaherty*, 172 F.4th at 225-226, and many other district courts have agreed. *E.g.*, *Minnesota*, 2026 WL 2150211, at *1. And although the Ninth Circuit reached the opposite conclusion today, disagreeing with *Flaherty* on whether sports event contracts are swaps, that acknowledged conflict on a controlling question of federal law is itself a serious question warranting relief.

***Field Preemption:*** Every marker of congressional intent shows the CEA preempts the field of on-DCM trading. Mot. 13.

Defendants quibble with terminology, calling Kalshi's contracts "indistinguishable from what others call 'bets.' " Opp. 5. But the question is whether the contracts fall within the preempted field. They plainly do. *Flaherty*, 172 F.4th at 228-231.[1]

Defendants invoke (at 15-16) the absurdity canon, arguing that if Kalshi's contracts are subject to the CFTC's exclusive jurisdiction, the CFTC would become "the nation's sole gambling regulator, forcing sportsbooks across the country out of business." That strawman, ironic from a state that forbids sportsbooks, is incorrect. The CEA preempts state law as to on-DCM trading but leaves states free to regulate (or ban) off-DCM transactions like sports bets. To be a swap, an instrument must be capable of being "traded" on an exchange. 7 U.S.C. § 2(a)(1)(A); *see* Further Definition of "Swap," 77 Fed. Reg. 48,208, 48,217 (Aug. 13, 2012) (swaps are "*traded* on organized markets and over the counter" (emphasis added)). Kalshi's contracts, like all derivatives, trade on a nationwide market at prices set by market forces; sports bets are customer-to-company transactions priced by a bookmaker.

[1] Contrary to Defendants' suggestion (at 5), the CFTC has long agreed: *"[D]ue to federal preemption*, event contracts *never violate state law when they are traded on a DCM*." Appellant Br. 27, *KalshiEX LLC v. CFTC*, No. 24-5205 (D.C. Cir. Oct. 16, 2024) (emphases added).

Defendants argue (at 17-20) that field preemption is confined to "rare cases" and never reaches generally applicable state laws. Not so. The Seventh Circuit held generally applicable fiduciary-duty and negligence claims preempted because their application "would directly affect trading on or the operation of a futures market." *Am. Agric.*, 977 F.2d at 1156-57. Within an occupied field, preemption reaches "even complementary state regulation." *Arizona*, 567 U.S. at 401. Even the Ninth Circuit agreed that the CEA is "a comprehensive regulatory scheme" that "preempts the field of regulating swaps traded on a DCM." *Assad*, slip op. 44. Defendants' authorities involve state laws outside the federal field. *See Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 20 (1987); *Huron Portland Cement Co. v. City of Detroit*, 362 U.S. 440, 444-445 (1960). Utah's threatened application of its laws, by contrast, would forbid a federally designated exchange from listing the very instruments Congress committed to the CFTC. And *Dickson v. Uhlmann Grain Co.*, 288 U.S. 188 (1933) (at 18), construed the *pre-1974* statute Congress later overhauled to preempt the futures field, H.R. Rep. No. 93-1383, at 35.

Defendants urge (at 19-20) that the CFTC is not a gaming regulator. But that statement appeared in a proposed rule the agency withdrew, Event Contracts, 91 Fed. Reg. 5,386, 5,387 (Feb. 6, 2026), and it gets the Special

Rule backwards: If the Commission could not adequately oversee gaming contracts, the remedy would be to prohibit them—not to redistribute that authority among 50 states. 7 U.S.C. § 7a-2(c)(5)(C)(i).

***Conflict Preemption:*** Federal law permits trading on Kalshi's DCM; Utah law forbids it. That conflict is plain, and federal law is supreme.

Defendants assert (at 20) that Kalshi "would not violate the impartial-access rule by requiring users to comply with the laws of their State." But the rule requires "impartial access" to all "member[s]." 17 C.F.R. § 38.151(b). A law requiring Kalshi to refuse every Utah resident is the opposite of impartial access.

The conflict is actual, not hypothetical: The CFTC's August 11 order directs Kalshi to keep operating notwithstanding state enforcement. CFTC Order 9-10. A state law or court order compelling Kalshi to violate a valid, unchallenged CFTC order conflicts with federal law. *See Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 377-378 (2015).

Defendants respond (at 21) that federal gambling statutes cut against uniformity. But 18 U.S.C. § 1955 addresses "illegal gambling businesses," and 15 U.S.C. § 3001(a)(1) states a policy finding about state responsibility. Neither regulates trading on DCMs or amends Section 2(a)(1)(A), and the CEA's specific command controls over those general provisions. *See*

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012).

## II. THE EQUITIES STRONGLY FAVOR RELIEF.

***Irreparable Harm:*** The "Hobson's choice" between incurring "potentially huge" liability by disobeying state law and suffering "the injury of obeying the law" easily qualifies as irreparable harm. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992). Here the choice is starker: Operating exposes Kalshi and its personnel to third-degree-felony liability carrying up to five years' imprisonment, Utah Code Ann. §§ 76-9-1404, 76-9-1405, while ceasing to operate would defy the order from Kalshi's federal regulator.

Defendants call these harms "speculative" (at 22-25) because they are "conditioned upon a future decision by Kalshi to violate Utah law."[2] But that *is* the question an injunction asks: If Kalshi is correct on the merits, it faces a Hobson's choice absent relief. *See Morales*, 504 U.S. at 381.

Nor is the harm limited to prosecution. Compliance would require terminating or unwinding open positions, which the CFTC has ordered Kalshi not to do, *see* Mot. 23, and forgoing revenue and goodwill—losses that

[2] Defendants do not dispute the imminence of the Attorney General's threat to enforce that law. Mot. 8.

cannot be recouped, *see Flaherty*, 172 F.4th at 231. Defendants concede that sovereign immunity would bar Kalshi from recovering damages. *Chamber of Com. v. Edmondson*, 594 F.3d 742, 770-771 (10th Cir. 2010).

***Balance of Equities:*** Kalshi's irreparable harms outweigh any harm to Defendants or the public. Utah "does not have an interest in enforcing a law that is likely constitutionally infirm," and "the public interest will perforce be served by enjoining the enforcement of the invalid provisions of state law." *Id.* at 771 (citation modified).

Defendants invoke (at 26-27) public-health harms from problem gambling, but Kalshi provides consumer-protection measures—Know-Your-Customer procedures, self-exclusion tools, trading breaks, and personal funding caps—and Defendants never explain why they are inadequate. *See* Mot. 25 n.4.

Kalshi seeks only to maintain the status quo, and Defendants identify no Utah user harmed by it. *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1154-55 (10th Cir. 2001). Kalshi has operated without restriction in Utah since 2021. Defendants' assertion (at 28) that Kalshi "has never been immune or exempt from Utah state law" assumes the answer to the preemption question.

## III. Kalshi's Motion Is Procedurally Proper.

Defendants contend (at 7) that Kalshi's motion is procedurally deficient under Federal Rule of Appellate Procedure 8(a)(2)(A). But Rule 8 does not require a formal denial. Kalshi moved in the district court on August 6, advised the court it would seek relief here absent a ruling by August 10, and received none. D. Ct. Dkt. No. 70 at 3. And because the district court had already denied a preliminary injunction and entered summary judgment against Kalshi, a further application there would be futile. *See, e.g.*, *McClendon v. City of Albuquerque*, 79 F.3d 1014, 1020 (10th Cir. 1996); *Populist Party v. Herschler*, 746 F.2d 656, 657 n.1 (10th Cir. 1984) (per curiam).[3]

## CONCLUSION

The Court should grant an injunction prohibiting enforcement against trading on Kalshi's exchange pending appeal.

[3] Defendants' reliance (at 8) on 10th Circuit Rule 8.1(A) fails for the same reason. Kalshi's motion identifies the facts giving rise to this Court's jurisdiction under 28 U.S.C. §§ 1291, 1292(a)(1), describes the proceedings below, and states the grounds for relief. Mot. 8-10.

August 28, 2026

Respectfully submitted,

*/s/ Neal Kumar Katyal*

NEAL KUMAR KATYAL
JOSHUA B. STERLING
COLLEEN E. ROH SINZDAK
WILLIAM E. HAVEMANN
SAMANTHA K. ILAGAN
MILBANK LLP
1101 New York Ave., NW
Washington, DC 20005
Telephone: (202) 835-7505
nkatyal@milbank.com

GRANT R. MAINLAND
ANDREW L. PORTER
NICOLE D. VALENTE
DAVIS B. CAMPBELL
MILBANK LLP
55 Hudson Yards
New York, NY 10001

MATTHEW L. LALLI
ANNIKA L. JONES
BRANDON S. FULLER
SNELL & WILMER LLP
15 W. South Temple, Ste. 1200
Salt Lake City, UT 84101

*Counsel for Plaintiff-Appellant KalshiEX LLC*

## CERTIFICATE OF COMPLIANCE

This reply complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(C) because it does not exceed 2,600 words, excluding the parts of the reply exempted by Federal Rules of Appellate Procedure 27(a)(2)(B) and 32(f).

This reply also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using Microsoft Word in Georgia font 14-point typeface.

August 28, 2026

*/s/ Neal Kumar Katyal*
Neal Kumar Katyal

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 28, 2026, I caused the foregoing to be electronically filed with the Clerk of the United States Court of Appeals for the Tenth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

August 28, 2026

*/s/ Neal Kumar Katyal*
Neal Kumar Katyal