Milbank

**WILL HAVEMANN**
Partner
1101 New York Ave., N.W. | Washington, DC 20005
T: +1 (202) 835-7518
whavemann@milbank.com | milbank.com

September 8, 2026

**By Electronic Filing**

Christopher M. Wolpert
Clerk of Court
U.S. Court of Appeals for the Tenth Circuit
Byron White United States Courthouse
1823 Stout Street
Denver, CO 80257

**Re: *KalshiEX LLC v. Cox*,**
**No. 26-4100 – FRAP 28(j) Letter Response**

Dear Mr. Wolpert:

*Assad* rejected the district court's holding—that the CEA does not expressly preempt state law. It held the CFTC's "exclusive jurisdiction" "excludes all others" and thus "expressly preempts state law." 2026 WL 2543846, at *7. A contrary interpretation would render § 2(a)(1)(A)'s saving clause "superfluous." *Id.* Nor did Congress's "more explicit language" in § 16(e)(2) undermine the exclusive-jurisdiction provision's preemptive effect. *Id.* The panel thus declined to apply a presumption against preemption, instead "focus[ing] on the plain wording." *Id.* (citation omitted).

*Assad* further concluded Kalshi's contracts are not "swaps." Its analysis is unpersuasive.

- *Assad* ignored that the CFTC's "exclusive jurisdiction" applies to *all* "agreements" traded on-DCM, not just swaps. 7 U.S.C. § 2(a)(1)(A).
- *Assad* acknowledged the Special Rule places "swaps" involving "gaming" within CFTC jurisdiction. 2026 WL 2543846, at *12-14. Indeed, Judge Lee's concurrence noted the Special Rule does "not seem to categorically bar all gaming contracts." *Id.* at *19. But the panel concluded a CFTC regulation prohibits such contracts. Even if that were correct (it is not), it reinforces preemption. The regulation could only prohibit contracts involving gaming if the CFTC has jurisdiction over them. *Assad*'s reasoning will soon be obsolete because the CFTC's proposed regulation clarifies sports-event contracts are permitted.
- *Assad* acknowledged the "colorable textual basis" to conclude Kalshi's contracts are "swap[s]." *Id.* at *14 (citation modified). But it held sports-event contracts don't qualify because they involve "outcome[s]" rather than events and because swaps must involve "inherent[ ]" financial consequences. *Id.* at *11-12. That flouts the text. An "event" includes an "outcome," and the CEA requires events with "potential"—not "inherent"—

economic consequences. Any contention sports events categorically lack potential economic consequences is self-evidently incorrect.

- *Assad* adopted extratextual limiting principles for fear the swap definition would otherwise lack any. But the definition already excludes events without any potential economic consequences, subject to causation principles.
- *Assad* wrongly believed Congress didn't intend the CEA to preempt gambling laws. A main purpose of the CFTC's exclusive jurisdiction was to preempt long-standing state efforts to regulate futures as gambling. *See* Kevin Van Wart, *Preemption and the Commodity Exchange Act*, 58 Chi.-Kent L. Rev. 657, 700 (1982).

Respectfully submitted,

*/s/ William E. Havemann*
William E. Havemann

*Counsel for Appellant KalshiEX LLC*

cc: All Counsel (via ECF)
Word Count: 350